Good morning. Before we begin this morning we have a motion to entertain. Judge Muir, thank you very much on this rainy overcast day. I do have some happy business to attend to before we get to our busy schedule this morning. I'd like to move the admission to the bar of the court of my three law clerks and I will do each of them right in order. First I move the admissions of Erica Nicole Anderson, who is a member of the bar in good standing of the highest court of Virginia, and Julianne Doe, who is a member of the bar in good standing of the highest court of Illinois, and Christopher R. Nalavenko, who is a member of the bar in good standing of the highest courts of New York and the they possess the necessary qualifications. Those are the official words that have to be spoken, but I will just add briefly that I think if my motion is granted they will be excellent additions to the bar of the court. They've been of invaluable assistance to me this year. Thank you, Judge Shaw. Without objection, the motion is granted. Would you please face the clerk and raise your hands. I swear or affirm that you will report yourself as attorneys and consuls of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. Congratulations and welcome to the bar of the United States Court of Appeals for the Federal Circuit. And on behalf of all my colleagues, welcome to the bar as well and we hope to see you back here regularly for social occasions only. The first case this morning is 085105, Sharp v. the United States. Mr. Meckle. Thank you, Your Honor. May it please the court. What did Congress mean by the phrase, by reason of an individual's status as a surviving spouse of a veteran? We've made clear that the Department of Defense is not exactly sure what that term means on an affirmative basis. That said, though, we also believe that that term, though, does not mean survivor annuity payments. And we have several, and the Department has several reasons for that belief, Your Honor. First, it can't be refuted that Title X in Section 1450C is explicitly clear that any SBP annuity payment that is received must be reduced commensurately by any DIC payment that's received. That's on the books. It has not been repealed despite several attempts to do so. Plaintiffs or appellees argue that SBP has to be the benefit because that's the only benefit that could be referenced by the veteran's status. And you've conceded that? Pardon me, sir? You've conceded, have you, that there's no other benefit that you And you say in your reply, Reeve, you think maybe someday Congress would pass a statute that might fit in? We did say that it could possibly be a prospective matter. We know that in the comments... If there's no statute that will fit into the system here, then Congress passed a statute that's meaningless. Correct? Incorrect? Incorrect so far as the statute has that. In this case, your honor, Congress must... The statute doesn't have any purpose. It decorates a stat. It's just there, right? Well, in response to that, your honor... You're aware of the canons of statutory construction that we try not to construe statutes to have no meaning. That's true, but there's also statutes of statutory construction that discuss the idea that when Congress is fully aware of an executive agency's interpretation of a certain provision and is carrying out that provision in a certain manner, that subsequent attempts, that failed attempts at legislation that don't overturn the, for instance, in this case, the offset practice, also are persuasive. Also... You supplied us with some additional authority just recently that comes in a letter form talking to us about some new legislation that's been filed. Is that correct? We've provided... Yes, your honor. What's the force and effect of that legislation? It's consistent with our previous arguments that the congressional process is still reviewing this matter that, contrary to the trial court's... From your perspective, are they fixing the problem? Well, Congressman Boyers looks like they're fixing it. Certainly, as it goes to the absurd result argument or the... Are they repealing this statute to make certain that this offset can't happen in the circumstances of this case? That appears to be the intent of Congress as we see that, your honor, though there still might be a problem. It looks like the intent of Congress is to expand it, not to repeal it, to cover more people and not to take it away from the people that already have it. At least... Well, that's true, but that goes to us, as I was saying earlier, your honor, about the idea that... One of our arguments was always that it would seem that Congress, if they were going to grant a benefit, would try to be more inclusive. In this case, they're certainly being more inclusive. You have to go with what you can get. And if they only got that much, they don't want to talk about it anymore. They want to go and get the rest of it. Why would they bring up something that they might lose? It isn't being addressed in this legislation. But the fiscal constraints have always been a consideration by Congress, and that was set forth in the Senate report in the most recent legislation introduced by Senator Nelson. How many people are affected by the statute as it now reads? I don't know the exact number, your honor, but I do know, last time I spoke with members of the Department of Defense Finance and Accounting Service, that they believe that the back pay will be, at this point, about $6 million. I do not know what the front pay will be. I think it's $6 million with the back pay, with the number of people to be eligible. Now, what it goes forward in front pay, I don't know if that's been calculated, and I also don't know how many other individuals will be applying for the benefit, your honor. One issue, though, I think that should be considered is that the appellees make a point about the 2002 legislation that did not pass. In that legislation, Congress specifically noted that survivor benefit annuity was the benefit that they were considering when they put in sort of the notwithstanding clause. A couple of things there we'd like to point out is, one, is that that statute did not pass. More importantly, when it was subsequently reintroduced, there was no mention of that survivor benefit passage, which DOD, I think it's reasonable to conclude saying that there's something else that must be out there. In fact, they used a very general term, veterans benefit, that's defined in Title 32, and we've searched, and we have not been able to find where the term veteran can be found in any place in Title 10. And therefore, Congress, by inserting the term veteran, must have been considering some other, you know, the more general broad term veteran must have been considering that there had to be a benefit that was out there that would be effective. And finally, too, when they did pass the Veterans Benefit Act, Section 2 of that act also said that if there are any repeals by this amendment, they should be limited to Title 38. We've covered these points in our brief, and I don't want to belabor them. And subject to your questions, I'd go ahead. Have you done any empirical analysis or research on who it is that the universe of the surviving spouses, who they've married, for example, have they married older veterans themselves? No, we have not, Your Honor. The Department of Defense Finance and Accounting Service might have looked at that, and there might be something in one of the Congressional Budget Reports, and if the Court would like some additional... Well, I know, I just was curious, because you made a point in your brief in sort of saying what conceivable policy could Congress have had in mind to advance if we were to adopt the analysis of the lower court as advanced by the appellee. And I just wondered whether maybe somewhere along the line, someone decided that we want to create an incentive for a particular group of surviving spouses to encourage them to remarry. Well, I think the language that the sponsor... Which is passing your point that it discriminates against people below a certain age, but I mean, Congress can rationally draw lines. I think that they weren't doing it as an incentive. What they were trying to do, though, is say, we're going to penalize you if you do use it. I think that language, we're not penalizing you for marriage, but I don't think they were saying we want to incentivize marriage, though that's a purpose if they want to do so. Wouldn't you think it would be a rational thing to do if you were a surviving spouse in this particular age group? Certainly would make marriage more attractive than it might otherwise be. Your Honor, I would hope that people marriage for love and not money. So in this case... We're in tough times. Taking care of a person who, you know, that's why I wondered whether there was any evidence that these ladies had married people who were either men or women who were in the service. No, I don't believe, though, I do know that there's been many studies of like, say, surviving spouses of those killed in action, who are in their 20s, who I know are directly or especially affected. Your Honor, subject to regressions, may I reserve some time?  Thank you. Mr. Reines. Thank you, Your Honor. May it please the Court, Ed Reines representing Patricia Sharp, Margaret Haverkamp, and Ida Dean-Rogers. I'd like to start with the benefit that's been wrongly withheld by the government from the plaintiffs. The benefit is the survivor's benefit plan. And keep in mind, the payments under this plan are the result of insurance payments taken out of the pay of their husbands who gave their lives and were disabled in the course of duty. And why that's important to the disposition of this appeal is the language of Section 1311E, which is the language, statutory language at issue, refers to surviving spouse of a veteran. And in any basic understanding that a legislature would have or anyone else... The actual language is such individual status as the surviving spouse. That language is present as well. And the proposing counsel makes much out of the word status. And let me take that right on. So first of all, under any common sense interpretation, survivor's benefits to surviving spouses based on pay, someone in the military who's then retired, is status as the surviving spouse of a veteran. That's common sense. But we don't even have to... The award is given to you because you're defined as a surviving spouse, but the entry into and the participation in the program as well folks are quite alive, right? That's true. But in terms of the payment of the benefit, that's triggered by the fact that someone's  Being present... If you're eligible, you become eligible for benefits at some future date while you're alive, right? That's correct. Well, the SBP is insurance that they've paid for. The DIC is if they die of service connected. Right. They don't pay anything for that other than they're alive. Right. But in terms of survivor's benefits, we don't need to get into the common sense hair splitting as to whether there's a difference between a veteran and a military retiree, which is what the government's pinning its case on, or did at least in the briefs. Because we have a definition of veteran that's applicable to Section 1311E. And I think by any reasonable reading, that definition is plainly met here. And that's Section 101.2 of Title 37. Veteran means a person who served in the active military and who was discharged or released there from. And that's consistent with military retirees. And the government conceded below their language, a retiree will always be a veteran. And so the question is whether it's sufficient, as I understand Judge Carpenter, is whether it's sufficient. In other words, does being a veteran, status as a veteran, have to be the only thing that causes you to be entitled to benefits? And the answer to that is obviously not. There's no benefit on the statute on the books, including DIC, where just being a veteran alone entitles you to the benefit. So it can't be just being survived as a veteran, because that means, again, the ridiculous result that nobody would ever be entitled to it. The question is that one of the aspects of the benefit, and it clearly is, because veteran status, a retiree will always be a veteran. So in terms of the plain text, I think it's encompassed easily there. On top of that, you have the use in Section 13 of 11 of the statement under another provision of law in the middle of the statute, who is eligible for benefits under another provision of law. And it doesn't limit it to under another provision of law in this title. And in two other locations within the same subsection of 1311, when they want to be clear that they're limiting something to the title, they just put the words in of the title. And it would have been so easy to do that. The absence of that and the sweeping statement under another provision of law, I think, again, supports the trial court's conclusion that the clear language required in this case. In terms of having no effect, we have the concession from the government that there is no statute in the world that this would affect, and that all of this language and all the time that everybody spent on it was a total waste of time because nothing's covered. It's interesting background that that wasn't the position in the Court of Federal Claims. In the Court of Federal Claims, the government tried to identify two statutes that could be affected, the Federal Employees Compensation Act and the Radiation Exposure Compensation Act, and represented to the court that they could have been offset against the EIC. The government's waived those arguments, right? Understood. Those arguments don't exist anymore, as we made clear in the briefs. Our point isn't to suggest that somehow those do apply. The point really is that the government— Trying to find some statutes that would fit the bill here. I think there's two probative things that derive from that argument. One is the fact that they're tying themselves in a pretzel here, trying to find some use for this statute, is a loud clue that their interpretation— I mean, give the government its credit. They don't often do it. They fell on their sword on this argument. Fair enough there. And the second point would be that if they're construing this section broad enough to cover those other statutes, which are in different titles, obviously their suggestion that 1311E is rigidly tied down to Title 37 can't be right. But let's move on, because I think we're all in agreement that under the government's interpretation, it would be meaningless. Do we know why, when Congress decided that they were going to restore DIFC benefits to some surviving spouses, why they chose the remarried after the age of 57 cutoff? In terms of the precise age that changed over the course of the bills, in terms of the category, you know, I think we just have the legislative history, and I don't think that sheds more that it was, as the co-sponsor and Chairman Brown stated, it was the camel's nose under the tent. And this kind of line drawing is routine. I mean, why 57? Why should someone that's age 57— Was 3311 enacted before the 2003 act? When was 1311 enacted? 1311E was enacted in 2003 as part of the Veterans Benefits Act. Now, just a few more points that I want to raise that I think are helpful to this. One is the government's interpretive attitude. Frankly, with due respect, I think lip service only paid to the fact that under existing, longstanding Supreme Court precedent, there's a canon—this is the King Supreme Court case— that provisions for benefits to members of the armed forces are to be construed in the beneficiary's favor. The government, I don't think, has ever genuinely taken that to heart in this. What you heard at the very outset of the government's argument was, the Department of Defense doesn't know what the statute means, or what the language or reason of another provision of law says. Well, if there's any ambiguity about it, then it would seem that you would work to find one consistent with a number of canons, giving every statute in effect, but also the canon that benefits to veterans are to be construed liberally, and you would find a use for this. The additional point I want to go to is instead, and they say this in their briefing, is they viewed the veterans' positions highly disfavored. And so you say to yourself, okay, well, they're obligated under the Supreme Court, the government, to construe it liberally, and yet they're arguing to you that our position is highly disfavored. And that's hinged on the use of the word notwithstanding, and that suggestion that there's some sort of implied repeal. Your Honor, I think clearly there's a long line of cases on notwithstanding that says that's expressed. There's nothing implied about it. It's saying we are superseding prior statutes that would suggest otherwise. And I think that it should not be perceived in any way as disfavored. The last point I want to make is, in some ways, an absolute clincher to this. And in the governance brief at one point, this is without a trace in legislative history in terms of our position. In the 107th Congress, a bill with virtually identical language, the 1311E, was presented. And in that legislative history, the government said point blank that the point of that language, they tied it to the predecessor, the 1311E, will ensure that there's no reduction of other benefits to which the surviving spouses may be entitled, such as survivor benefit plan payments. That's what Congress said in the committee report, accompanying the language that's virtually identical, 1311E. The only difference the government's point is that the age changed, as though that would make some kind of difference. When the bill was reintroduced in the following Congress, in the 108th Congress, the initial bill did not have an analog to section 1311E. From 2002 to 2003, they omitted that. And so the accompanying report obviously didn't have the language, as it had been in the prior year's report, saying what 1311E's purpose was, because it wasn't present. On the floor debate, 1311E was added back in. And so they didn't go back and amend the committee report that it was months old, because it was an action on the floor. And they adopted the language that was virtually identical, and actually identical in all relevant parts, which the Congress itself in its committee report of the Veterans Committee had said, the point of this is to prevent an offset on SBP. Now, in reply, the government makes a number of arguments about that. But I just wanted to direct the court to two cases, because we didn't get an opportunity to respond to the reply. U.S. v. Edmonds, 410 U.S. 396, where the Supreme Court states, surely an interpretation placed by the sponsor of the bill on the very language subsequently enacted by Congress cannot be dismissed out of hand, as the dissent would have it, simply because the interpretation was given two years earlier. To the same effect is Huffman, which is a Federal Circuit case, 263 F. 1341, point blank. And then Amon v. Merit Systems Protection Board, 951 F. 1247. All of those stand for the proposition that when there's a committee report in one Congress, and the language that's being introduced in the next Congress, the fact of that change in Congress does not reduce the probative value of the committee report. And it would be... And these are cases that were not cited in your red brief? Right. These are cases that were responsive to the reply argument that attempted to belittle the committee report, and I think inappropriately so. And that's at page 13 of the government's reply brief. How about in the reply brief the attempts at continuing legislative intervention in this area as indicating that this could not mean what the court said it would mean? And I think that misses the point between a partial step and a full step. And the fact that you attempt to make a full step shouldn't in any way diminish the real fact of a partial step. Especially when you've got a committee report that says that's what Congress intended. I mean, it's just such a pure legislative history before the fact that it's after the fact sort of tea leaf reading that somehow by trying to take a major step means that this important step didn't happen. I don't think it's fair. Now, one other point, and this follows up on questioning by Judge Clevenger. On May 5th, there was an additional attempt to address the offset. And this is H.R. 2243 in the current Congress. And as you heard the government, based on the questioning of Judge Clevenger, the government viewed this as an attempt, again, to repeal the offset in toto. And Mr. Mikkel, I think, was pretty candid and straightforward about that. If you look at that statute, specifically Section 2A.2, it proposes to add a new section which uses the exact same language that's in 1311E. The same language that we're debating here. And everybody agrees, even the government, it seems, that that would actually have the effect of preserving against the Title X SBP offset. So once again, the government in trying to defend this position, which is indefensible in our view, is straining itself, creating these fault lines in its argument. So right here in a pending legislation, they're attempting to do the total offset, not just for the remarrieds that are currently addressed by 1311E, but for everybody. And they mimic the language that's in 1311E. And everybody, including the government, agrees that would have the effect. So it seems to me that that's just an outright clincher. So I appreciate the court's time. If there's any other questions, of course, I'd be happy to address them. Thank you. Thank you, Your Honor. Mr. Mickel? Thank you, Your Honor. I'd like to make three points, if I may. The first point is we agree that the language, by reason of a status, is important. And the reason it's important is because while a military retiree may elect to enter into the Survivor Benefit Program, one, that's not an automatic. The person has to affirmatively elect. And also to clarify a point, if there is an offset, as Judge Mayer did mention, those annuities that have been paid in will be subsequently reimbursed. So if there's any implication that those payments are somehow lost to the retiree who made those payments, that's not the case. Well, maybe the premiums are returned, but not the benefit that you thought they had purchased. Well, yes, but that benefit is being instead replaced by the tax-free benefit of the DIC. Also, too, to go back on that by reason of, there is not a- Are they refunded with interest? I believe they are, Your Honor, but I can provide that information to the court. I believe the DFS does that now, but if the court would like, I can provide that information. A veteran who is not a retiree, though, could not go to the Pentagon or Fort Meyer and submit an application for Survivor Benefit Payments just by that status alone. So say if Major McGovern decides, well, I'm sure she's going to stay for her 20-year, hopefully 30-year career, if she gets out of the military tomorrow, she would be a veteran, who served honorably, but the next day if she walked into her personnel shop and said, I'd like to apply for the Survivor Benefit Payment Plan based upon my status, by reason of my status as a veteran, they would say, thank you for your service, Major McGovern, but you're not entitled to the Survivor Benefit Plan based upon your status as a veteran. You have to be a military retiree who is elected to participate in the program. But a military retiree is, of necessity, a veteran. That is true, but we said that- You can't be a military retiree without being a veteran. But Congress didn't use that term in the 1911E, and this ties nicely into the second point I'd like to make, Your Honor, and that is Appellee's Counsel, Mr. Raines, does state that the courtship placed a tremendous amount of emphasis in the 2002 legislation. It failed because it's the same language, and in 2002 they specifically mentioned the Survivor Benefit Plan. We think, though, that's more persuasive for our argument, because if, in fact, Congress knew that that was the benefit that they were trying to reach, why didn't they say that in 2003? There's no mention of the Survivor Benefit Plan in 2003 or subsequent to 2003 in any legislative material. They do mention it in the military update, and we provided cases why that wasn't persuasive. We also stated, though, if you find the military update persuasive, then you should look to some of the comments where, for instance, the budget director of the committee, I believe, said, well, we didn't really have authority to deal with Title X matters. And finally, too, is the appellees have never addressed the effect of Section 2 in the public law that talks about how any types of expressed repeals are limited to Title 38. That's never been addressed. Finally, let's even assume that the language prior to 2003 has some persuasion. Well, certainly language in 2009, when this issue is clearly before Congress, everyone knows about the trial court's case. It was published. The sponsors have spoken about it. But in the legislative discussion on the Federal Retirement Reform Act of 2009, which is 1804, and at House Report 4275, one of the sponsors of the 2003 legislation, Congressman Brown, specifically says, the Military Specialist Surviving Equity Act, while this bill doesn't repeal the widow's tax imposed by the offset of the SBP plan by DIC, it helps military survivors during a difficult time for all of us. So the question is, if there was some type of partial repeal, or if there was some type of, as the trial court found, why wasn't that mentioned while we're discussing this new legislation? And on this new legislation, I want to make clear, there are several pieces of legislation that would make this problem go away. The one piece I was talking about, where Mr. Raines said it was a concession, was primarily to Argument 3 regarding the absurd result, because that one piece of legislation would not just allow surviving spouses who are 57 and older to get the benefit. It would apply across the board. It's the other legislation, like the Military Survivors Equity Act, that would totally repeal 1450C, that would clearly make it apply across the board. And one last word. Appellees have used some language like they've been wrongly withheld and things like that. And I think on behalf of the Department of Defense... There's really no evidence of any current legislation where Congress is trying to take away from the appellees the benefit they have as a result of the decision below. Am I right? Am I hearing this correctly? All of this legislation is designed to make more surviving spouses of veterans able to enjoy freedom from offset. All in aggregate, there's two pieces of legislation that are trying to do away with 1450C completely. Therefore, there would be no offset. The other legislation we described in our briefs, as well as our... I mean, if what the Congress is trying to do is to make certain that nobody suffers any offset, that would seem to me to be saying they were glad they did what they did in this particular statute, as it's construed below and argued by the appellees. What's the theory? You're going to take the benefit that the appellees want below, take it away from them, because Congress is going to give it back to them. That's your argument? No, the argument, Your Honor, is that... What did I miss? I mean, I'm hearing you talking about all these new statutes that may come along when it sounds like they're going to give other people the benefits that the appellees have. But that would be... What they're saying is... No, we would say that they're trying to go across the board and that there hasn't been a partial repeal yet. And we know that there hasn't been a partial repeal. Specifically in 2008, when the full repeal was right before the House, we discussed that about the Special Survivor Annuity. Okay, thank you very much. Thank you, Your Honor. Case is submitted.